Slip Op. 22-148

# UNITED STATES COURT OF INTERNATIONAL TRADE

| | |
|---|---|
| RISEN ENERGY CO., LTD., <br><br> Plaintiff, <br><br> and <br><br> TRINA SOLAR CO., LTD. ET AL., <br><br> Consolidated Plaintiffs, <br><br> and <br><br> SHANGHAI BYD CO., LTD. ET AL., <br><br> Plaintiff-Intervenors, <br><br> v. <br><br> UNITED STATES, <br><br> Defendant, <br><br> and <br><br> SUNPOWER MANUFACTURING OREGON, LLC, <br><br> Defendant-Intervenor and Consolidated Defendant-Intervenor. | Before: Claire R. Kelly, Judge <br><br> Consol. Court No. 20-03743 <br> **CONFIDENTIAL VERSION** |

## OPINION

[Sustaining the U.S. Department of Commerce's remand determination in the 2017–2018 administrative review of the antidumping duty order covering crystalline silicon photovoltaic cells, whether or not assembled into modules, from the People's Republic of China.]

Dated: December 20, 2022

Gregory S. Menegaz, J. Kevin Horgan, and Alexandra H. Salzman, DeKieffer & Horgan, PLLC, of Washington, D.C., for plaintiff Risen Energy Co., Ltd.

Jonathan M. Freed, Trade Pacific PLLC, of Washington, D.C., for consolidated plaintiffs Trina Solar Co., Ltd., Trina Solar (Changzhou) Science & Technology Co., Ltd., Yancheng Trina Guoneng Photovoltaic Technology Co., Ltd., Turpan Trina Solar Energy Co., Ltd., Hubei Trina Solar Energy Co., Ltd., Trina Solar (Hefei) Science & Technology Co., Ltd., and Changzhou Trina Hezhong Photoelectric Co., Ltd.

Jeffrey S. Grimson, Sarah M. Wyss, Bryan P. Cenko, and Jacob M. Reiskin, Mowry & Grimson, PLLC, of Washington, D.C., for consolidated plaintiffs and plaintiff-intervenors JA Solar Technology Yangzhou Co., Ltd., Shanghai JA Solar Technology Co., Ltd., and JingAo Solar Co., Ltd.

Jonathan T. Stoel and Craig A. Lewis, Hogan Lovells US LLP, of Washington, D.C., for consolidated plaintiff and plaintiff-intervenor Shanghai BYD Co., Ltd. and plaintiff-intervenors Canadian Solar Inc., Canadian Solar International Limited, Canadian Solar Manufacturing (Changshu), Inc., Canadian Solar Manufacturing (Luoyang), Inc., CSI Cells Co., Ltd., and Canadian Solar (USA) Inc.

Joshua E. Kurland, Trial Attorney, and Reginald T. Blades, Jr., Assistant Director, Civil Division, Commercial Litigation Branch, U.S. Department of Justice, of Washington, D.C. for defendant United States. Also on the brief were Brian M. Boynton, Principal Deputy Assistant Attorney General, and Patricia M. McCarthy, Director. Of counsel was Leslie M. Lewis, Attorney, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce, of Washington, D.C.

Kelly, Judge: Before the court is the U.S. Department of Commerce's ("Commerce") remand determination pursuant to the court's remand order, see Risen Energy Co. v. United States, 569 F. Supp. 3d 1315 (Ct. Int'l Trade 2022) ("Risen I"), on Commerce's final determination in its 2017–2018 administrative review of the antidumping duty ("ADD") order covering crystalline silicon photovoltaic cells,

Consol. Court No. 20-03743 Page 3
**CONFIDENTIAL VERSION**

whether or not assembled into modules, ("solar cells") from the People's Republic of China ("China").  <u>See</u> Final Results of Redetermination Pursuant to Court Remand, A-570-979 (July 5, 2022), ECF Nos. 137-1, 138-1 ("Remand Results"); <u>see generally</u> <u>[Solar Cells from China]</u>, 85 Fed. Reg. 62,275 (Dep't Commerce Oct. 2, 2020) (final results of [ADD] admin. review and final deter. of no shipments; 2017–2018) ("<u>Final Results</u>") and accompanying Issues and Decision Mem., A-570-979 (Sept. 28, 2020), ECF No. 49-5 ("Final Decision Memo"); Order on Consent Mot. to Consol. Cases, Dec. 16, 2020, ECF No. 44 (consolidating Ct. Nos. 20-03757, 20-03761, 20-03797, 20-03802, 20-03804, and 20-03743).  For the following reasons, the court sustains Commerce's determination on remand.

## BACKGROUND

The court presumes familiarity with the facts of this case as set out in its previous opinion ordering remand to Commerce, <u>see</u> <u>Risen I</u>, 569 F. Supp. 3d 1315, and now recounts only those facts relevant to the court's review of the Remand Results.  In the underlying review of the ADD order covering solar cells from China for a period of review covering December 1, 2017 through November 30, 2018, Commerce selected Risen Energy Co., Ltd. ("Risen") and Trina as mandatory respondents.[1] Mem. Re: Resp't Selection, PD 101, bar code 3830533-01 (May 6, 2019);

---

[1] Commerce determined that Risen (Wuhai) New Energy Co., Ltd.; Zhejiang Twinsel

(footnote continued)

Consol. Court No. 20-03743                                                                    Page 4
**CONFIDENTIAL VERSION**

see also Risen I, 569 F. Supp. 3d at 1319 nn.1–2, 1321.  Commerce selected Malaysia as the primary surrogate country.  Risen I, 569 F. Supp. 3d at 1321.  The parties moved for judgment on the agency record, challenging Commerce's selection of Malaysia as the primary surrogate country, certain surrogate values for inputs, the surrogate financial ratio calculations, the partial application of facts otherwise available with an adverse inference, and calculation of the separate rate.  Id. at 1320.

In Risen I, the court remanded Commerce's final determination on this ADD administrative review.  569 F. Supp. 3d at 1338.  Specifically, the court remanded Commerce's: (i) decision to rely on the Malaysian import value for silver paste, id. at 1327–30; (ii) application of facts otherwise available with an adverse inference to

---

Electronic Technology Co., Ltd.; Risen (Luoyang) New Energy Co., Ltd.; Jiujiang Shengchao Xinye Technology Co., Ltd.; Jiujiang Shengzhao Xinye Trade Co., Ltd., Ruichang Branch; Risen Energy (Hong Kong) Co., Ltd.; and Risen Energy (Changzhou) Co., Ltd. ("the Risen Entities") were affiliated and treated the entities as a single collapsed entity for the purpose of the dumping margin calculation. Affiliation and Single Entity Status of [the Risen Entities] at 1–2, PD 411, bar code 3938677-01 (Jan. 31, 2020).  Risen Energy Co., Ltd. challenges Commerce's final determination independently.  See Compl. ¶¶ 1, 4–5, Oct. 28, 2020, ECF No. 7. Commerce determined that Trina Solar Co., Ltd. (formerly, Changzhou Trina Solar Energy Co., Ltd.) (TCZ); Trina Solar (Changzhou) Science and Technology Co., Ltd. (TST); Yancheng Trina Guoneng Photovoltaic Technology Co., Ltd (formerly, Yancheng Trina Solar Energy Technology Co., Ltd.) (TYC); Changzhou Trina Solar Yabang Energy Co., Ltd. (TYB); Turpan Trina Solar Energy Co., Ltd. (TLF); Hubei Trina Solar Energy Co., Ltd. (THB); Trina Solar (Hefei) Science and Technology Co., Ltd. (THFT); and Changzhou Trina Hezhong Photoelectric Co., Ltd. (THZ) (collectively, "Trina") were affiliated and treated the entities as a single collapsed entity for the purposes of Commerce's dumping margin calculation.  Mem. Re: Affiliation and Single Entity Status of [Trina] at 1–2, PD 410, bar code 3938672-01 (Jan. 31, 2020).

Risen and Trina's review responses, id. at 1335–37; (iii) valuation for backsheet, id. at 1330–32; (iv) valuation for ethyl vinyl acetate ("EVA"), id.; and (v) calculation of the weighted-average antidumping margins for Risen and Trina for application to the separate rate respondents, id. at 1337–38.

Commerce filed its Remand Results on July 5, 2022. In the Remand Results, Commerce: (i) values silver paste using Malaysian import data for HTS 7106.92.00 rather than HTS 7115.90.1000, Remand Results at 9–11; (ii) under protest, applies partial neutral facts available instead of applying an adverse inference when selecting facts otherwise available in calculating Trina and Risen's dumping margins,[2] id. at 5–7; (iii) continues to value Risen's backsheet using import data from Malaysia's HTS 3920.62.1000, id. at 12–15; (iv) again values Risen's EVA using Malaysia's HTS 3920.10.1900, id. at 20–22; and (v) recalculates the dumping margins of the mandatory respondents and revises the weighted-average dumping margin for separate rate respondents, in light of the Court's remand order, id. at 27–28.

No party objects to Commerce's determination on remand regarding silver paste or its application of partial neutral facts available. See Remand Results at 7, 11. Risen argues that Commerce's surrogate value HTS classifications for backsheet

---

[2] Under respectful protest in light of the court's remand order, Commerce determines not to apply an adverse inference on remand in selecting among the facts otherwise available for the missing factors of production consumption rates to calculate Risen and Trina's dumping margins. Remand Results at 5. Instead, Commerce applies partial neutral facts available, using the average consumptions rates reported by Risen and Trina for each input, to calculate the dumping margins. Id.

Consol. Court No. 20-03743                                                                Page 6
**CONFIDENTIAL VERSION**

and EVA are unsupported by substantial evidence. Pl.'s Comments on Remand Redetermination at 1–7, Aug. 4, 2022, ECF No. 142 ("Risen's Comments"). JA Solar, Canadian Solar, and BYD agree with Risen that Commerce's determinations on remand valuing backsheet and EVA are unsupported by substantial evidence and do not comply with the court's remand order. Comments on Final Remand Redetermination of Consol. Pls. & Pl.-Intervenors JA Solar Tech. Yangzhou Co., Ltd., Shanghai JA Solar Tech. Co., Ltd., & JingAo Solar Co., Ltd. at 2, Aug. 4, 2022, ECF No. 141; Shanghai BYD Co., Ltd. & Canadian Solar Inc. et al.'s Comments on Final Results of Remand Redetermination at 5–9, Aug. 4, 2022, ECF No. 143. No party objects to Commerce's separate rate calculation based on changes Commerce made to the mandatory respondents' dumping margins on remand. Defendant United States argues that Commerce's determinations on remand are supported by substantial evidence in accordance with law and should be sustained. Def.'s Resp. Pls.' Comments on Remand Results at 5–16, Oct. 6, 2022, ECF Nos. 146–47.

## JURISDICTION AND STANDARD OF REVIEW

This court has jurisdiction pursuant to section 516A of the Tariff Act of 1930,[3] as amended, 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c) (2018), which grant the court authority to review actions contesting the final determination in an administrative review of an ADD order. "The court shall hold unlawful any

---

[3] Further citations to the Tariff Act of 1930, as amended, are to the relevant provisions of Title 19 of the U.S. Code, 2018 edition.

determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). "The results of a redetermination pursuant to court remand are also reviewed for compliance with the court's remand order." Xinjiamei Furniture (Zhangzhou) Co. v. United States, 968 F. Supp. 2d 1255, 1259 (Ct. Int'l Trade 2014) (internal quotation marks omitted).

## DISCUSSION

### I. Valuation of Silver Paste

On remand, Commerce reconsiders its valuation of silver paste using Malaysian import data for HTS 7115.90.1000, and instead values silver paste using Malaysian import data for HTS 7106.92.00. Remand Results at 9–11. No party objects to Commerce's determination on remand. The court sustains Commerce's determination on remand to value silver paste using HTS 7106.92.00.

In Risen I, the court remanded Commerce's final determination regarding its valuation of silver paste, for further explanation or reconsideration in light of detracting evidence that the value is aberrant.[4] 569 F. Supp. 3d at 1327–30. Commerce disregards aberrational data because it is unreliable. Antidumping Duties; Countervailing Duties, 62 Fed. Reg. 27,296, 27,366 (Dep't Commerce May 19,

---

[4] Commerce values the factors of production from the primary surrogate country and resorts to a secondary surrogate country only if data from the primary surrogate country is unavailable or unreliable. 19 C.F.R. § 351.408(c)(1)–(2).

1997) (final rule). In determining whether an input's surrogate value is aberrational, Commerce "typically compares the prices for an input from all countries found to be at a level of economic development comparable to the [nonmarket economy] whose products are under review from the [period of review] and prior years." Final Decision Memo at 21. Commerce disregards "small quantity import data . . . when the per-unit value is substantially different from the per-unit values of the larger quantity imports of that product from other potential surrogate countries." SolarWorld Americas, Inc. v. United States, 962 F.3d 1351, 1358 (Fed. Cir. 2020) (quoting Shakeproof Assembly Components Div. of Illinois Tool Works, Inc. v. United States, 59 F. Supp. 2d 1354 (Ct. Int'l Trade 1999)) (internal quotations marks and brackets omitted).

Commerce's determination on remand must be supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Universal Camera Corp. v. N.L.R.B., 340 U.S. 474, 477 (1951) (quoting Consol. Edison Co. v. N.L.R.B., 305 U.S. 197, 229 (1938)) (internal quotation marks omitted). "The substantiality of evidence must take into account whatever in the record fairly detracts from its weight." Id. at 488. In providing its explanation, Commerce must articulate a "rational connection between the facts found and the choice made." Burlington Truck Lines, Inc. v. United States, 371 U.S. 156, 168 (1962). An agency's decision is arbitrary when, inter alia, it deviates from an established practice followed in similar circumstances and does not

provide a reasonable explanation for the deviation. See <u>Consol. Bearings Co. v. United States</u>, 348 F.3d 997, 1007 (Fed. Cir. 2003); <u>see also</u> <u>SKF USA Inc. v. United States</u>, 263 F.3d 1369, 1382 (Fed. Cir. 2001).

On remand, Commerce reopened the record and included data for Malaysian Harmonized Tariff Schedule ("HTS") number 7106.92.00. Remand Results at 2–3. Commerce values silver paste using the average unit import value ("AUV") of Malaysian import data using HTS 7106.92.00 because its description is more specific than HTS 7115.90.1000 to the silver paste Risen and Trina use and because the AUV of imports using that subheading is more consistent with the record benchmark data. <u>Id.</u> at 9. Commerce concludes HTS 7106.92.00 is more specific because HTS 7106.92.00 only covers forms of silver while HTS 7115.90.1000 covers other precious metals in addition to silver, including gold and platinum. <u>Id.</u> Additionally, Commerce determines that Malaysian customs officials classify the silver paste used in solar cell product under HTS 7106.92.00 instead of HTS 7115.90.1000. <u>Id.</u> at 9–10. Commerce also determines that the AUV of imports using Malaysia's HTS 7106.92.00 is reliable because the AUV of imports is consistent with the prices of silver paste in the market research report.[5] <u>Id.</u> at 10–11. Thus, Commerce's

---

[5] During the period of review, the AUV for imports into Malaysia using HTS 7106.92.00 is 582.75 USD/kg while the AUV of imports into Malaysia using HTS 7115.90.1000 is 8,645.31 USD/kg. Prices of silver paste during the period of review

(footnote continued)

Consol. Court No. 20-03743                                                                          Page 10
**CONFIDENTIAL VERSION**

determination on remand is consistent with the court's remand order, is supported by substantial evidence, and is in accordance with law.

## II. Application of Facts Available

On remand, Commerce reconsiders applying partial facts otherwise available with an adverse inference to calculate Risen and Trina's dumping margins. Remand Results at 5–7. Instead, Commerce, under respectful protest, revises its calculation of Risen and Trina's weighted-average dumping margins by applying partial neutral facts available. Id. at 7. No party objects to Commerce's determination on remand. Id. For the following reasons, the court sustains Commerce's application of partial neutral facts available.

When necessary information is not available on the record or a party or other person fails to provide requested information, Commerce uses the facts otherwise available to make its determination. 19 U.S.C. § 1677e(a); Nippon Steel Corp. v. United States, 337 F.3d 1373, 1380–81 (Fed. Cir. 2003). If Commerce finds that an interested party failed to cooperate to the best of its ability, Commerce may use an inference that is adverse to the interests of that party when selecting the facts otherwise available. 19 U.S.C. § 1677e(b). A party cooperates to the best of its ability when it does "the maximum it is able to do." Nippon, 337 F.3d at 1382. However,

---

in potential surrogate countries range from 599.60 USD/kg to 644.60 USD/kg for Brazil, from 614.90 USD/kg to 637.50 USD/kg for Malaysia, from 563.70 USD/kg to 584.30 USD/kg for Mexico, and from 563.70 USD/kg to 911.90 USD/kg for Russia. Id. at 10.

under 19 U.S.C. § 1677e(a) Commerce may use adverse inferences against a cooperative respondent, if doing so will yield an accurate rate, promote cooperation, and thwart duty evasion. Mueller Comercial de Mexico v. United States, 753 F.3d 1227, 1232–36 (Fed. Cir. 2014). When using the facts available with an adverse inference under Mueller, the predominant interest when determining the antidumping rate must be accuracy. Id. at 1235.

The court remanded Commerce's application of facts available with an adverse inference for reconsideration or additional explanation. Risen I, 569 F. Supp. 3d at 1335. Specifically, Commerce failed to demonstrate that Risen and Trina did not put forth the maximum effort to provide full and complete responses to inquiries from Commerce. Id. Commerce also failed to demonstrate that Risen and Trina have leverage to induce their non-cooperative unaffiliated suppliers to cooperate, that the non-cooperative unaffiliated supplies are evading their own duties by exporting subject merchandise through Risen or Trina, or that using the highest factor of production consumption rates on the record results in an accurate dumping margin. Id.

On remand, Commerce reconsiders its findings and under respectful protest revises its calculation of Risen and Trina's weighted-average dumping margins by applying partial neutral facts available instead of applying facts otherwise available

Consol. Court No. 20-03743                                                                                              Page 12
**CONFIDENTIAL VERSION**

with an adverse inference.[6] Remand Results at 7. Specifically, Commerce uses Risen and Trina's average reported consumption rates for each input as a substitute for the missing factor of production consumption rates to calculate their dumping margins. Id. Thus, Commerce's determination on remand is consistent with the remand order, is supported by substantial evidence, and is in accordance with law.

## III.  Valuation of Backsheet

On remand, Commerce continues to value backsheet using HTS 3920.62.1000, covering polyethylene in plates and sheets (not including film) rather than HTS 3920.62.9000 covering polyethylene in non-plates and sheets (including film) because the thickness of Risen's backsheets is consistent with sheet, rather than film. Remand Results at 12–15, 17–20. Risen objects and argues backsheet should be

---

[6] Commerce revises its determination under protest and argues that Risen and Trina are both experienced respondents that are aware of the importance of factor of production information to the accuracy of Commerce's dumping calculation. Remand Results at 6. Further, Commerce maintains that Risen and Trina did not cooperate to the best of their ability because the record contains no indication either company attempted to ensure reporting of necessary factor of production data by securing cooperation of unaffiliated suppliers prior to purchasing their products. Id. at 6.

As the court previously explained in Risen I however, none of Commerce's questionnaires to Risen and Trina asked either respondent to discuss whether they stopped doing business with a supplier because the supplier refused to provide them with the supplier's factors of production. 569 F. Supp. 3d at 1336 n.36. The best of its ability standard requires a respondent to "put forth its maximum effort to provide Commerce with full and complete answers to all inquiries in an investigation." Nippon, 337 F.3d at 1382. Here, Commerce may not determine that a respondent failed to cooperate to the best of its ability because it did not provide information that Commerce did not request. Commerce could have requested information from the respondents on their efforts to leverage their suppliers into complying. Instead, Commerce chose to rely on partial neutral facts available. Remand Results at 5–7.

Consol. Court No. 20-03743                                                                Page 13
**CONFIDENTIAL VERSION**

valued using the HTS heading that includes film. Risen Comments at 2–4. For the reasons that follow, the court sustains Commerce's remand decision to value backsheet using HTS 3920.62.1000 covering non-film polyethylene.

The court remanded Commerce's use of Malaysia's HTS 3920.62.1000 to value Risen's backsheet as not supported by substantial evidence and instructed Commerce to address evidence that detracted from its conclusion. Risen I, 569 F. Supp. 3d at 1331. The court also remanded Commerce's decision as arbitrary and requested Commerce explain why it considers backsheet to be a "sheet" using import data for Malaysia's HTS 3920.62.1000 in light of its past decisions to value backsheet using HTS descriptions comparable to Malaysia's HTS 3920.62.9000 (Poly(Ethylene Terephthalate): Other Than Plates And Sheets). Id. at 1331–32.

On remand, Commerce reopened and placed on the record ASTM abstracts from ASTM D4801 and ASTM D6988 relating to film and sheet. Remand Results at 13; see Joint Appendix at REM JA 8, Mem. Reopening the Record, Att. II (pdf 197-205), A-570-979, REM PD 3–4, bar code 4234679-01 (Apr. 22, 2022), ECF Nos. 148–49. Commerce relies upon the ASTM abstracts to support its view that polyethylene sheets are those that are 0.25 mm and thicker; in contrast, film is a type of sheeting less than 0.25 mm thick. See Remand Results at 13. Commerce concludes that, under these definitions, Risen's backsheet constitutes sheet rather than film.[7] Id. at 13–14.

---

[7] Risen's backsheets during the POR have [[thicknesses of 0.30 mm, 0.315 mm, and 0.342 mm]] and thus are [[thicker than 0.25 mm]]. Id.

No party submitted evidence rebutting the ASTM abstracts on sheet and film thickness or evidence regarding the meaning of plates, sheets, and film in Malaysia's HTS. Id. at 14.

Commerce's determination on remand that Risen's backsheet constitutes sheet is reasonable. The court asked Commerce to explain why backsheet is not film, despite it being thin and flexible. Risen I, 569 F. Supp. 3d at 1331. The ASTM abstracts support Commerce's analysis based on thickness, not flexibility. See Remand Results at 13. Although Risen provided marketing materials demonstrating that some companies in the solar power industry describe thicker backsheet as "film," see id. at 16, these materials provide a competing definition at best; they do not rebut Commerce's definition of sheet as plastic products 0.25 mm thick and greater, nor do they demonstrate that Commerce's determination is unreasonable.

Furthermore, Commerce's use of Malaysia's HTS 3920.62.1000 on remand is not arbitrary. The court asked Commerce to explain its determination when, in its prior administrative review, Commerce valued backsheet using import data for headings comparable to Malaysia's HTS 3920.62.9000 that included the description "other than sheet." Risen I, 569 F. Supp. 3d at 1331–32. Commerce may change its practice in similar circumstances if it provides a reasonable explanation for its deviation. See Consol. Bearings Co., 348 F.3d at 1007. Here, Commerce explains that it did not have the ASTM definition of film on the record in the previous administrative review in this proceeding. Remand Results at 19–20. Commerce has

explained its deviation from its prior determination and supported its determination with record evidence. Its determination regarding backsheet is sustained.

## IV. Valuation of EVA

On remand, Commerce continues to value Risen's EVA using HTS 3920.10.1900 (Polymers of Ethylene: Plates And Sheets: Other Than Rigid) rather than HTS 3920.10.9000 (Polymers Of Ethylene – Other) because Risen's EVA does not meet the ASTM definition of film. Remand Results at 20–22, 24–27. For the following reasons, the court sustains Commerce's remand decision to value EVA using HTS 3920.10.1900 covering polyethylene other than rigid plates and sheets.

The court remanded for reconsideration or further explanation Commerce's decision to value its EVA using Malaysia's HTS 3920.10.1900. Specifically, the court requested Commerce address the evidence Risen submitted demonstrating that its EVA is flexible and described as film. Risen I, 569 F. Supp. 3d at 1332. The court also requested Commerce explain why its treatment of EVA differs from its historical treatment of EVA. Id.

On remand, Commerce concludes that no characteristics of EVA support defining it as film instead of sheet. Risen reported that its EVA is over 0.5 mm thick— over twice as thick as the maximum thickness for film in the ASTM description.[8]

---

[8] Risen claims that the ASTM standard does not define film and sheet based on thickness and only suggests the term "sheet" may be used when addressing generic

(footnote continued)

Consol. Court No. 20-03743                                                                 Page 16
**CONFIDENTIAL VERSION**

Remand Results at 21.  Risen describes its EVA as flexible; however, Commerce determines that, because the description of HTS 3920.10.1900 is "Other than Rigid," it contains flexible plastic products such as Risen's EVA.  Id.  Although Risen submitted marketing materials that Risen argues show the term "film" to be broader than how Commerce defines it, see Risen Comments at 5, Commerce determines Risen's marketing materials describe the product as both "EVA film" and "EVA sheets."  Remand Results at 22.

Commerce's determination on remand that Risen's EVA constitutes "sheet" is reasonable.  Commerce explains the ASTM abstracts provide definitions of sheet and film based on thickness, not flexibility, and under this definition EVA is sheet because it is over 0.25 mm thick.  See Remand Results at 21.  The marketing materials, which Commerce determines use the terms "film" and "sheet" inconsistently, id. at 22, at best provide a competing definition and do not rebut Commerce's definition of sheet as a plastic product 0.25 mm or greater in thickness or Commerce's finding that EVA meets the definition of sheet.

---

plastic product over 0.25 mm thick and is not specific to the solar industry.  Risen Comments at 5.  Contrary to Risen's argument, Commerce determines that the abstract defines film as sheeting no greater than 0.25 mm thick, which is in fact a definition of film based on thickness.  Remand Results at 24–25.  Commerce also determines there is no indication this standard is limited to certain types of plastics or does not cover products in the solar industry.  Id.  Risen's arguments ask this court to reweigh the evidence.  The court will not do so.

Consol. Court No. 20-03743                                                                                                  Page 17
**CONFIDENTIAL VERSION**

Furthermore, Commerce's use of HTS 3920.10.1900 is consistent with its past practice. In its remand order, the court requested that Commerce explain its departure from its historical treatment of EVA. Risen I, 569 F. Supp. 3d at 1332. However, here Commerce explains that in the past it used Thai HTS 3920.10.000.90, an "other" HTS category, covering "plates, sheets, film, foil and strips of polymers of ethylene." Remand Results at 25–26. Thus "Commerce did not use a Thai HTS category that covered film, and not plates and sheets." Id. at 26. Commerce further explains that Malaysia, unlike Thailand, has separate HTS categories for polyethylene in plates and sheets and for polyethylene in other forms such as film. See id. at 26–27. Based on the ASTM definitions, Commerce concludes that Risen's EVA does not meet the definition of film and thus values EVA using import data for plates and sheets. Id. Because Commerce now values EVA using Malaysia's HTS covering plates and sheets and in the past valued EVA using Thailand's HTS covering plates, sheets, film, foil, and strips, Commerce's reliance on Malaysia's HTS 3920.10.1900 is not inconsistent with its past practice.

V.  **Calculation of the Separate Rate**

On remand, Commerce recalculates the separate rate in light of the changes made to the mandatory respondents' dumping margins. Remand Results at 27–28. No party objects to Commerce's determination on remand. See id. at 28. For the following reasons, the court sustains Commerce's recalculation of the separate rate on remand.

Consol. Court No. 20-03743                                                                               Page 18
**CONFIDENTIAL VERSION**

     Specifically, the court requested Commerce recalculate the separate rate consistent with the rate it calculates for Risen and Trina on remand. See Risen I, 569 F. Supp. 3d at 1337–38. The separate rate is "the weighted average of the estimated weighted average dumping margins established for exporters and producers individually investigated, excluding any zero and de minimis margins, and any margins determined entirely under [19 U.S.C. § 1677e]." 19 U.S.C. § 1673d(c)(5)(A); see also Final Results, 85 Fed. Reg. at 62,276 n.6.

     On remand, Commerce assigns a dumping margin to the separate rate respondents equal to the weighted average of the dumping margins Commerce calculates for the mandatory respondents. Remand Results at 27–28. Thus, Commerce's determination on remand is consistent with the court's remand order, is supported by substantial evidence, and is in accordance with law.

## CONCLUSION

     For the foregoing reasons, the Remand Results are supported by substantial evidence, are in accordance with law, comply with the court's order in Risen I, and, therefore, are sustained. Judgment will enter accordingly.

                                                         /s/ Claire R. Kelly
                                                         Claire R. Kelly, Judge

Dated:      December 20, 2022
                New York, New York